UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TOMMY McFARLAND, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 20-CV-2334 |
| ) | |
| BRENDAN KELLY, in his official ) | |
| capacity as Director of Illinois State ) | |
| Police, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff, Tommy McFarland, filed the instant Complaint (#1) on July 14, 2020. Therein, Plaintiff alleges that Defendant—Brendan Kelly, the Director of the Illinois State Police ("ISP")—violated his 14th Amendment right to procedural due process by administratively extending his time on the Illinois Sex Offender Registry by 10 years without providing a meaningful opportunity for review.

Plaintiff filed an Amended Motion for Class Certification (#35) on October 25, 2021, seeking certification of a class defined as: "[A]ll individuals on the Illinois Sex Offender Registry who have criminal convictions requiring registration for a period of ten years." Defendant filed a Response (#46) on April 8, 2022, and Plaintiff filed a Reply (#50) on May 11, 2022.

For the reasons set forth below, the matter is DISMISSED for lack of standing and Plaintiff's Motion for Class Certification (#35) is DENIED as moot.

# BACKGROUND

The Illinois Sex Offender Registration Act ("SORA") requires that individuals convicted of certain offenses register as sex offenders for a period of 10 years following their conviction or their release from prison. 730 Ill. Comp. Stat. 150/7.[1] An individual required to register must provide his or her address and other identifying information on an annual basis to the chief of police in the municipality in which he or she resides, among other obligations set forth in the statute. *Id*. § 3.

SORA provides that "The Director of the Illinois State Police, consistent with administrative rules, shall extend for 10 years the registration period of any sex offender, as defined in Section 2 of this Act, who fails to comply with the provisions of this Article." *Id*. § 7. Likewise, Section 1280.40(a) of the Illinois Administrative Code states: "Failure to comply with any provision of [SORA] shall extend the period of registration by ten years beyond the period otherwise required."

Before proceeding to further background material, it should be noted that the terms "extend" or "extension" as used in SORA and throughout this order have the potential to be misleading. Tracie Newton of the ISP explained in her deposition that when a registrant receives a 10-year extension, that 10-year term begins to run upon their next registration. For example, where a person with nine years remaining on the registry receives a 10-year extension, they are *not* then obligated to be on the registry for 19 years. Rather, their 10-year term essentially begins anew upon their next registration.

---

[1] Certain offenders qualifying for a more serious designation under SORA are required to register for life. 730 Ill. Comp. Stat. 150/7.

Thus, while SORA explicitly refers to the sanction as an extension, it may be more easily understood as a resetting of the 10-year term.

Plaintiff was convicted of attempted criminal sexual assault in 2003 and was required to register under SORA beginning in November 2004, for a period of 10 years.

According to the allegations in his Complaint, Plaintiff was living at a registered address with family in 2012. Police went to the residence to check on Plaintiff's status, but he was not home. Plaintiff subsequently received notice that the ISP had extended his registration period by 10 years. Plaintiff alleges that he "had no opportunity to provide the State Police proof that I was living at my registered address and explain the situation[.]" Plaintiff was charged with failure to register, but that charge was dropped soon thereafter.

Plaintiff further alleges that in 2019, police again went to Plaintiff's residence to do a "compliance check." Once again, Plaintiff was not home. Plaintiff later received notice of a 10-year extension. Plaintiff was charged with failure to register, but the charges were again dropped.

Newton has been the supervisor of the ISP Sex Offender Registration Unit since 2005. She explained that the letter informing a registrant of their noncompliance and 10-year extension also explains how the extension may be contested. They may contest the extension "informally," by contacting "the local law enforcement agency that found them in non-compliance with the registration requirements and explain why they believe the finding to be in error." Newton stated that local law enforcement may then contact ISP, which will remove an extension made in error. Registrants also have the

option of contacting ISP directly to "informally" contest an extension through a document review process.

Newton further explained that a registrant may formally contest the extension through the procedures set out in § 1200.30 of the Illinois Administrative Code. That section sets out the procedures for appealing any ISP action and provides for a potential "fact-finding conference" and subsequent appeal to an administrative law judge. Ill. Admin. Code § 1200.30. However, Newton agreed that the notification letters sent to extended registrants contained no reference to the Illinois Administrative Code. Newton stated that Plaintiff did not avail himself of either the informal or formal procedures in 2012 or 2019.

Defendant has supplied letters sent to Plaintiff on November 1, 2010. November 4, 2011, May 22, 2012, and May 18, 2016[2]. Each letter informs Plaintiff that he has violated SORA and will be required to register for 10 years "starting from the date of [his] next registration." The letters further state:

> If you believe your registration period has been improperly extended, you may petition for a document review. If you wish to utilize this document review process, please send a written request to the Illinois State Police, Sex Offender Registration Unit, 801 South 7th Street, Suite 200-S, Springfield, Illinois, 62703, along with any documentation which you believe establishes your compliance with the Act. Such documentation should include copies of all your registration forms, and any letters, affidavits, or other information that supports your position.

---

[2] Newton stated that the ISP was unable to locate a record of the 2019 letter sent to Plaintiff. ISP provided the letter sent to local law enforcement notifying them of the 2019 extension.

The 2010, 2011, and 2012 letters state that if relief is not granted following document review, Plaintiff could petition for an administrative hearing. The 2016 letter did not include that information.

In her deposition, Newton expounded on the details of the extension process. When local law enforcement determines through an investigation that an individual is not residing at their registered address, they may change the registrant's status to "location unknown." Where a registrant is deemed "location unknown," they are automatically reclassified to noncompliant status in the LEADS system. Their registration period is extended when they next become compliant. Similarly, persons criminally convicted for failure to register and sentenced to the Illinois Department of Corrections are automatically moved to noncompliant status. Between January 1, 2016, and May 7, 2021, 3,800 extensions were issued. The ISP could not determine—and Newton could not estimate—how many of those extensions resulted automatically, either from "location unknown" status or a criminal conviction, as it would require individualized assessment of each extension. Newton testified that there are approximately 40,000 people on the sex offender registry, though it is unclear from the record whether that number includes lifetime registrants.

Newton maintained that registrants not afforded relief after document review are free to petition for an administrative hearing, though they are not informed by ISP of that right. She estimated that the last such hearing was held in 2016. Newton recalled that, prior to 2016, her office would receive "handfuls [of hearing requests] every month." Newton referred to administrative hearings as being "placed on hold" since

then, but would not state the reason for the hold, citing privilege between her office and the Illinois Attorney General.

With regard to Plaintiff, Newton recalled a phone conversation from June 2018 in which Plaintiff argued that he should not be extended because he was not convicted of failure to register. It was one of multiple phone conversations she had with Plaintiff. Newton testified that the phone call was sufficient to begin the document review process. Newton contacted Champaign, Illinois police, who confirmed that they had police reports documenting each of Plaintiff's "location unknown" status changes. Because Plaintiff did not supply any other information or documentation, his extension was upheld.[3]

Plaintiff could not recall ever speaking with Newton. He recalled speaking with someone named Lori at the ISP some time in 2017. Plaintiff could not recall the substance of those conversations, but found Lori to be "unprofessional."

Plaintiff testified that Champaign police came to his residence in 2012 when he was not home, and a household member mistakenly told the officers that Plaintiff did not live there. Plaintiff then contacted the police department, and was told that officers would return to the residence. Plaintiff added: "I don't know if they came back out, or if I went to them, but I know I ended up going to jail." He agreed that he received a letter informing him of his noncompliance and extension. He "believe[d]" that he sent the ISP

---

[3] It is unclear which extension was upheld following the 2018 phone call.

a written request for review. Plaintiff added: "2012 is a blur to me right now. Anything up until today is a blur."

Plaintiff testified that in May of 2019 police again visited his residence when he was not home. A household member confirmed to police that Plaintiff lived there, but Plaintiff was nevertheless given an extension. Plaintiff contacted Lori in 2019 after learning about that year's extension. Plaintiff testified that he was extended again in 2021 for "Change of address. Failure to report." He did not contact the ISP regarding that extension. Plaintiff testified that he disagreed with that extension and all of his extensions because he had never been convicted for failing to register.

## ANALYSIS

In his Complaint, Plaintiff alleges that the procedures employed by the ISP in issuing administrative extensions are unconstitutional in that they fail to provide essential components of procedural due process, such as notice and a hearing. He asserts that Ill. Comp. Stat. 150/7 and Ill. Admin. Code § 1280.40(a)—both of which authorize the ISP to impose such extensions—are unconstitutional. He seeks declaratory and injunctive relief, and now moves for class certification.

To be certified as a class action, a proposed class must meet the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three provisions in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Rule 23(b)(2), which Plaintiff invokes in this case, requires that "the party

7

opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Further, before a class is certified, the named plaintiff must have standing. *Kohen v. Pacific Investment Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009). "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (cleaned up).

Article III, Section 1 of the United States Constitution limits federal jurisdiction to actual cases or controversies. *Id*. at 337. Out of the cases and controversies limitation arises the doctrine of standing. *Id*. at 338. The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Robins*, 578 U.S. at 339. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing those elements. *Id*.

In his Response, Defendant argues that Plaintiff lacks standing. Specifically, Defendant asserts that Plaintiff received notice in 2012 of the formal procedures available to him, including his right to petition for an administrative hearing. Because Plaintiff elected not to avail himself of those procedures, Defendant argues, he now lacks standing to challenge them.

Even assuming Defendant's underlying premise is correct, his singular focus on Plaintiff's 2012 extension is unexplained. The record makes clear that Plaintiff received 10-year extensions again in 2016 and 2019. These extensions occurred following a marked change in the ISP's extension policy. Namely, the ISP removed from their form extension notification letters any reference to an administrative hearing. This aligns with Newton's testimony that there has not been such a hearing since 2016, and that those hearings are "on hold." Plaintiff asserts in his Reply that he is only challenging ISP's post-2016 policies, policies under which he clearly suffered an injury. The court agrees; Plaintiff's decisions in the wake of his 2012 extension have no bearing on his standing to challenge post-2016 policies as unconstitutional.

While Defendant's argument on standing is unavailing, the court has its own concerns. See *Snider v. Heartland Beef, Inc.*, 2020 WL 4880163 (C.D. Ill. Aug. 14, 2020) ("As a jurisdictional issue, the Court has a responsibility to address standing sua sponte.").

In his Complaint, Plaintiff requests the following relief: (a) injunctions "prohibiting Defendant from administratively extending registration requirements pursuant to 730 ILCS 150/7 and 20 Ill. Adm. Code § 1280.40(a) both with regard to Plaintiff and the members of the proposed class," and (b) "a declaratory judgment that 730 ILCS 150/7 and 20 Ill. Adm. Code § 1280.40(a) violate the Fourteenth Amendment." Thus, Plaintiff only seeks prospective relief in this case. See *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (describing "[t]he distinction between prospective and retrospective relief" as "a straightforward inquiry"). He does

9

not seek retrospective damages for Defendant's purportedly unlawful conduct, nor does he seek any sort of recission of his 10-year extension(s).

The prospective nature of the relief sought by Plaintiff is actually reflected in the definition of the class he seeks to have certified. Plaintiff defines the class as: "All individuals in the State of Illinois currently on the Illinois Sex Offender Registry who have criminal convictions requiring registration for a period of ten years." The class is comprised of any person against whom a 10-year extension might be levied in the future. It is decidedly *not* limited to registrants who, like Plaintiff, have already been extended.[4]

There seems to be no dispute that, generally, the imposition of a 10-year registration extension on Plaintiff suffices as a concrete injury. However, for the purposes of a standing analysis, the injury in question must correlate with the relief requested. "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d

---

[4]Indeed, if Plaintiff were seeking retrospective relief, his proposed class would fail for lack of typicality. See *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) ("A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.").
Plaintiff's class would include those registrants who are entirely uninjured in that they have never been extended. It would also include registrants who were either (a) extended as a result of a conviction for failure to register or (b) convicted of the same after being automatically extended when classified as "location unknown"—two groups who would have received adequate procedural due process in the criminal courts.

734, 738 (7th Cir. 2017). "To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); see also *McCullough v. City of Chicago*, 971 F. Supp. 1247, 1253 (N.D. Ill. 1997) ("When the relief sought is prospective in nature, as is a declaratory judgment, the plaintiff must show that obtaining that relief will prevent future harm that he or she is otherwise likely to suffer."). In other words: "a request for prospective relief must be accompanied by an allegation of prospective injury." *Thompson v. Whitmer*, 2022 WL 168395, at *2 (6th Cir. Jan. 19, 2022).

The above principles are derived from Article III's redressability requirement. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998); see also *Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000) ("Because an injunction or declaratory judgment addressing future seizures will not redress [the plaintiff's] ongoing injury, he lacks the personal stake in the outcome that provides standing.").

Accordingly, in considering whether Plaintiff has standing to pursue the relief he requests, the court must consider whether Plaintiff has shown that he faces a real and immediate threat of future injury. See *Lyons*, 461 U.S. at 102. More specifically: Does Plaintiff face a real and immediate threat of receiving a 10-year extension of his sex offender registration term?

"For purposes of standing to seek injunctive relief against future harm, courts generally assume that litigants 'will conduct their activities within the law and so avoid prosecution and conviction.'" *Simic*, 851 F.3d at 738 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Stated differently, "'[g]eneral assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws' cannot form the basis for allegations of real and immediate future injury sufficient to confer standing." *Id*. (quoting *Littleton*, 414 U.S. at 497).

In *Simic*, Tamara Simic challenged the constitutionality of a Chicago ordinance that prohibited texting while driving. *Simic*, 851 F.3d at 736. Simic had been fined under the ordinance, and sought monetary damages based thereon. *Id*. at 737. She also sought prospective relief in the form of a declaratory judgment holding the ordinance unconstitutional and an injunction halting the enforcement of the ordinance. *Id*. at 736-37. The Seventh Circuit found that Simic lacked standing to pursue prospective relief, noting that her threat of future injury was conjectural, and that the court was obligated to assume "that Simic does not have concrete plans to violate Illinois law by using her cell phone while driving in Chicago." *Id*. at 738.

The result in *Simic* was based in large part on similar analyses in *Littleton* and *Lyons*. In *Littleton*, the plaintiffs sought injunctive relief barring a state's attorney, police commissioner, and other officials from engaging in conduct in the administration of the criminal justice system that the plaintiffs alleged was unconstitutional. *Littleton*, 414 U.S. at 490-91. The Supreme Court found that the plaintiffs lacked standing:

12

> "[T]he prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing[.] . . . [A]ttempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture."

*Id*. at 496-97. Similarly, in *Lyons*, where the Plaintiff sought to enjoin the Los Angeles Police Department's policy on chokeholds, the Court found no standing because there was no imminent threat of the plaintiff being subjected to such a maneuver. *Lyons*, 461 U.S. at 105 ("That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.").

A sex offender serving a 10-year term on the Illinois sex offender registry is subject to a 10-year "extension" of that term if he or she "fails to comply" with the provisions of SORA. 730 Ill. Comp. Stat. 150/7. The provisions with which a registrant is obligated to comply are found in 730 Ill. Comp. Stat 150/3. The court must assume that Plaintiff does not have concrete plans to violate SORA's requirements, such that he would be subject to future extensions. See *Simic*, 851 F.3d at 738. The court also notes that Plaintiff does not challenge 730 Ill. Comp. Stat. 150/3 as unconstitutional, nor does he challenge the analog criminal statute as unconstitutional. See 730 Ill. Comp. Stat.

13

150/10 (establishing that violation of provisions of SORA is a Class 3 felony). And, again, Plaintiff does not seek any form of relief that would remedy his existing injury.

Presumably, Plaintiff would argue that his case illustrates the fact that a violation of SORA is not actually necessary for a person to receive a 10-year extension. It is, after all, his position that at least two of his extensions were imposed in error.

Even if the court assumes for the sake of argument that those extensions were imposed in error, those facts are insufficient to demonstrate a concrete likelihood that Plaintiff will be extended again. To be sure, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Littleton*, 414 U.S. at 496. But Plaintiff did not allege in his Complaint, nor did he even insinuate in his deposition, that the erroneous extensions were the result of some sort of intentional misconduct or misrepresentations on the part of the Champaign police, such that they might be indicative of future conduct.[5] The threat of Plaintiff receiving another extension is, at this point, purely conjectural or hypothetical. *Lyons*, 461 U.S. at 102.

To echo the Seventh Circuit, "[b]ecause an injunction or declaratory judgment . . . will not redress [Plaintiff's] ongoing injury, he lacks the personal stake in the outcome that provides standing." *Perry*, 222 F.3d at 314. Accordingly, the court finds that Plaintiff lacks standing to pursue the prospective relief contemplated in his Complaint.

---

[5] "There are some exceptions to this injury analysis in extreme situations, such as where a government official harasses a particular person by repeatedly bringing charges and then dismissing them or a government official acts without a colorable legal basis." *Simic*, 851 F.3d at 739. As in *Simic*, there is no such claim of harassment here.

14

This matter is therefore DISMISSED. *Hope, Inc. v. DuPage Cnty., Ill.*, 738 F.2d 797, 804 (7th Cir. 1984) ("If a plaintiff fails to meet the minimum constitutional requirements for standing . . . the district court must dismiss the action for failure of subject matter jurisdiction."). In turn, the Motion for Class Certification (#35) is DENIED as moot.

IT IS THEREFORE ORDERED THAT:

(1) This matter is DISMISSED without prejudice.

(2) The Motion for Class Certification (#35) is DENIED as moot.

ENTERED this 15th day of August, 2022.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE